UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW A. VANDERBUSH,

      Plaintiff,                             CIVIL ACTION NO. 09-11360

      v.                                      DISTRICT JUDGE DENISE PAGE HOOD

COMMISSIONER OF                 MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.     PROCEDURAL HISTORY**

    *A.     Proceedings in this Court*

On April 9, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits and Supplemental Security Income benefits (Dkt. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkts. 12, 18).

In light of the entire record in this case, I conclude that the Administrative Law Judge ("ALJ") failed to give controlling weight to the medical evaluations of Plaintiff's treating physicians or, alternatively, to adequately explain her reasons for not doing so. Therefore, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's

motion for summary judgment be **DENIED** and that this matter be **REMANDED** for further administrative proceedings consistent with the discussion below.

### B. *Administrative Proceedings*

Plaintiff filed the instant claims on September 1, 2005, alleging that he became unable to work on May 30, 2005 (Tr. 50, 368). The claim was initially disapproved by the Commissioner on February 17, 2006 (Tr. 22). Plaintiff requested a hearing and on May 6, 2008, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Ethel Revels, who considered the case *de novo*. In a decision dated May 29 2008, the ALJ found that Plaintiff was not disabled (Tr. 13-20). Plaintiff requested a review of this decision on July 29, 2008 (Tr. 9, 381). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, Tr. 9, 386-88), the Appeals Council, on February 12, 2009, denied Plaintiff's request for review (Tr. 6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 40 years old at the time of the most recent administrative hearing (Tr. 15). Plaintiff has past relevant work as an auto body worker, hi-lo driver, material handler, laborer and truck driver (Tr. 15). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since May 30,

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

2005 (Tr. 15). At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative disc disease of the lumbar spine, diabetes mellitus and hypertension. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the work must allow the following limitations: a sit/stand option after 30 minutes of standing; no walking more than two blocks at a time; no lifting more than 15 pounds at a time; simple repetitive tasks due to moderate limitations in the ability to maintain concentration for extended periods; use of a cane for ambulation; no bending; no fine fingering; no climbing of ladders, ropes or scaffolds; no frequent climbing of ramps or stairs; no work around dangerous machinery or at hazardous heights; no work on uneven surfaces; and no squatting crawling, stooping, or kneeling" (Tr. 16).

At step four, the ALJ found that Plaintiff could not perform any of his past relevant work (Tr. 19). At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of sedentary jobs available in the national economy, such as sorter (1,500 jobs available), bench assembler (3,000 jobs) and surveillance systems monitor (1,600 jobs) (Tr. 20).

### B. *Administrative Record*

Plaintiff was 37 years old at the time of his alleged onset of disability (Tr. 19, 405). He graduated from high school and performed a number of physically demanding jobs in the past (Tr. 19, 104-07, 416-20). Plaintiff testified that he was unable to work primarily due to back pain which radiated down both legs and caused numbness in his left foot (Tr. 406). He said his pain was constant and caused him to have difficulty sleeping. *Id.* Plaintiff estimated that he could sit

for five to ten minutes, stand for ten to fifteen minutes, walk 150 to 200 feet with a cane, and lift five to ten pounds (Tr. 406-08, 410). He described limited household activities, and described getting assistance from his wife (Tr. 88-94, 407, 411).

Plaintiff alleged disability as of May 2005. Lumbar spine x-rays taken in June 2005 showed degenerative changes with disc space narrowing from L3 through S1 and spondylosis, but no disc herniation or central canal stenosis (Tr. 142). A lumbar spine MRI revealed mild changes at L3-L4 and L4-L5, and greater changes at L5-S1 (Tr. 141). During a physical therapy evaluation in July 2005, Plaintiff rated his pain as 5 out of 10, and walked without an assistive device (Tr. 242-43). The evaluating therapist considered Plaintiff's rehabilitation potential to be good. *Id.* Dr. Todd Prochnow examined Plaintiff in September 2005, at which time Plaintiff exhibited low back discomfort and paraspinal pain, but no neurologic deficits (Tr. 250). Dr. R. Matta conducted a consultative examination of Plaintiff in November 2005, at which time Plaintiff exhibited positive straight leg raising bilaterally and decreased ranges of lumbar motion, but normal sensation and reflexes, and normal or near normal strength in all extremities (Tr. 257-63). Dr. Matta opined that Plaintiff required a cane while walking to reduce his pain. *Id.* Dr. Matta further noted that Plaintiff had an MRI of his back, which "showed arthritis and partially herniated discs" (Tr. 257).

A state agency medical consultant reviewed the medical evidence of record in November 2005, and concluded that Plaintiff could perform sedentary work which allowed him to use an assistive device for ambulation and involved no more than occasional postural activities (Tr. 266-73).

A repeat MRI in October 2006 again showed degenerative changes from L3 through S1 with no evidence of nerve root impingement (Tr. 365). Neurosurgeon, Dr. Hazem Eltahawy,

examined Plaintiff in October 2007 (Tr. 300-04). At this exam, Plaintiff exhibited normal neck movement but limited back flexion. He walked with a limping gait using a cane. Neurological, motor, reflex, and sensory examinations were essentially normal. Dr. Eltahawy did not express an opinion as to Plaintiff's functional capacity. *Id.* Dr. Eltahawy further noted that Plaintiff "has had a multitude of conservative management modalities with no improvement" and that "three-level surgical fusion yields less (sic) suboptimal outcomes as a general rule" (Tr. 302). Although his conclusions are unclearly worded, Dr. Eltahawy appears to be saying that surgery may not help Plaintiff.

In April 2008, Dr. Victor Reyes, Plaintiff's treating physician since May 2005, opined that Plaintiff could not perform even sedentary work on an ongoing basis (Tr. 293-95). The record contains handwritten progress notes (largely illegible) from 2005 through 2008 documenting treatment Plaintiff received for various complaints, including back pain (Tr. 314-52).

The ALJ asked Diane Regan, the vocational expert at Plaintiff's administrative hearing, whether simple, routine sedentary-level jobs existed that would allow Plaintiff to alternate between sitting and standing every thirty minutes, did not require that he walk more than two blocks at a time, were limited to simple, repetitive tasks, allowed use of a cane for ambulation, did not require bending, fine fingering, the climbing of ladders, ropes, or scaffolds, or more than frequent climbing of ramps or stairs, involved no work around dangerous machinery, at heights, or on uneven surfaces, and required no squatting, stooping, crawling, or kneeling (Tr. 421-22). Ms. Regan testified that such an individual could perform a significant number of sedentary-level jobs in the regional economy including work as a sorter, assembler, or surveillance system monitor (Tr. 423). Ms. Regan testified that if Plaintiff could walk no more than 200 feet, that

might impact his ability to get into his place of work, although he would be able to perform the job once he got there (Tr. 425).

   C.   *Plaintiff's Claims of Error*

Plaintiff raises two arguments on appeal: (1) that the ALJ failed to give controlling weight to Plaintiff's treating physicians, and in particular the opinion of Dr. Reyes who stated that Plaintiff was unable to perform even sedentary work; and (2) that the ALJ presented a flawed hypothetical question to the vocational expert, as the hypothetical presented failed to acknowledge that Plaintiff could only walk two blocks at a time.

## III.   DISCUSSION

   A.   *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241;

*Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C.    *Analysis and Conclusions*

An ALJ is generally required to give a treating physician's opinion controlling weight "if the opinion of the treating physician as to the nature and severity of a claimant's conditions is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record . . . . " *Rogers*, 486 F.3d at 242; *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (discussing the weight to be given a treating physician's opinion). Even when not given controlling weight, the opinions of treating physicians are entitled to deference. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." S.S.R. 96-2p (1996), 1996 S.S.R. LEXIS 9, at **9-10. This is so:

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

-10-

20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

If not accorded controlling weight, the ALJ must consider a series of factors in determining the weight to be accorded the treating physician's opinion, including: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009); *Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009). Additionally, the ALJ "must provide good reasons for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242.

After review of the record, I conclude that the decision of the ALJ did not give appropriate weight to Plaintiff's treating physicians and/or did not adequately explain why she departed from the diagnoses of those physicians, in particular the unequivocal opinion of Dr. Reyes that Plaintiff's back condition precluded him from all work. Simply put, the ALJ did not set forth "good reasons" for discounting the opinions of Plaintiff's treating physicians. Indeed, the only reason given by the ALJ for rejecting Dr. Reyes' opinion was that Dr. Reyes' opinion was "not well supported by the MRI or x-ray findings or the clinical test results from the examining and treating physicians" (Tr. 19). However, this conclusion is blatantly contradicted by the report of Dr. Eltahawy (a neurological surgeon who, incidentally, examined Plaintiff at the specific request of Dr. Reyes, Plaintiff's family physician). Dr. Eltahawy examined an October 2006 MRI of Plaintiff's back and concluded that Plaintiff suffered from multilevel degenerative

disc disease. Thus, the ALJ's stated reasons for rejecting Dr. Reyes' opinion is simply not supported by the record – in fact, Dr. Reyes' opinion is supported by clinical test results.

The Sixth Circuit has stated that "[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009). That is the proper course here, a remand is required so that the ALJ can, at a minimum, explain more fully why she rejected the opinions of Plaintiff's treating physicians.

Moreover, the ALJ improperly rejected Plaintiff's complaints of disabling pain. The ALJ stated that "the objective medical evidence does not fully support [Plaintiff's] allegations," of disabling pain (Tr. 17), however, in making this statement the ALJ both misapplied the test for evaluating pain set forth in *Duncan v. Secretary of HHS*, 801 F.2d 847 (6th Cir. 1986) and gave an inappropriately selective reading to the evidence. *Duncan* set the standard for reviewing subjective complaints of pain. "First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Duncan*, 801 F.2d at 853.

The starting point in scrutinizing subjective complaints of pain under *Duncan* is to determine if there is objective medical evidence of an underlying medical condition. Plaintiff easily passes that test. Based on physical examination and imaging tests (MRIs), Plaintiff was diagnosed with multiple level degenerative disc disease at L3-L4, L4-L5 and L5-S1 (Tr. 302).

Plaintiff's neurologist, Dr. Eltahawy, specifically recognized that Plaintiff tried "multiple conservative management modalities with no improvement" and Plaintiff's personal physician, Dr. Reyes, stated unequivocally that Plaintiff suffered from a severe back condition, which precluded him from even sedentary work.

As to the second part of the *Duncan* test, the evidence produced at the administrative hearing overwhelmingly shows that the Plaintiff's objectively established medical condition is of such severity that it could reasonably be expected to produce disabling pain. In making a determination under this second prong of *Duncan*, an ALJ must consider several factors set forth in 20 C.F.R. § 404.1529(c)(3):

> Factors relevant to your symptoms, such as pain, which we will consider include: (I) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (*e.g.*, lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

In this case, the ALJ overstated the import of Plaintiff's daily activities, while understating the intensity and frequency of his pain.

In terms of daily activities, the ALJ stated as follows: Plaintiff's "activities of daily living, which include driving, shopping, folding laundry, and watching television, are inconsistent with total disability and suggest that [Plaintiff] can perform a range of sedentary work on a sustained basis" (Tr. 18). There is, however, a profound difference between an individual with a sedentary lifestyle and one having a sedentary RFC, and the ALJ erred in conflating the two concepts. While Plaintiff's daily activities might suggest an individual with a

sedentary lifestyle, it hardly portrays a person who can perform a sedentary-level job five days a week, eight hours a day. In sum, the undersigned finds that the ALJ's decision in this case – based on a selective assessment of the record – is not supported by substantial evidence. Nor is the ALJ's rejection of the Plaintiff's credibility supported by substantial evidence. The great weight of the evidence shows that Plaintiff suffers from intractable back pain.

Finally, it appears that the ALJ's decision to deny Plaintiff benefits was based, at least partially, on a perceived reluctance to undergo back surgery or other more aggressive treatment options. Indeed, the ALJ observed that Plaintiff "has been treated only conservatively for his impairments and has not had any recent emergency medical interventions for pain" (Tr. 18). However, in order to support a denial of benefits, the evidence must show that a prescribed treatment would not only improve the claimant's health, but would restore the claimant's ability to perform substantial gainful activity. *See Harris v. Heckler*, 756 F.2d 431, 435-436 (1985). While it is theoretically possible that surgery might improve Plaintiff's condition, the record is devoid of any evidence that surgery would **restore Plaintiff's ability to work**. *See* 20 C.F.R. § 404.1530(a). In fact, the neurosurgeon who examined Plaintiff (Dr. Eltahawy) opined that surgery might not even help Plaintiff (Tr. 302). There is simply no evidence in the record that Plaintiff failed to follow a recommendation to undergo surgery and, in any event, even if Plaintiff's doctors did recommend surgery "[i]t is not [Plaintiff's] burden to undergo any and all surgical procedures suggested by his physician lest he is barred from receiving disability benefits." *Fraley v. Secretary of HHS*, 733 F.2d 437, 440 (6th Cir. 1984).

III.    **RECOMMENDATION**

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED**, and that

this matter be **REMANDED** for further administrative proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: May 10, 2010

CERTIFICATE OF SERVICE

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 10, 2010.*

S/Melody R. Miles
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*